FILED
2019 May-23 AM 08:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JAMES D. MONTGOMERY, }<br>}<br>Plaintiff, }<br>}<br>v. }<br>}<br>THE BOARD OF TRUSTEES OF }<br>ALABAMA AGRICULTURAL & }<br>MECHANICAL UNIVERSITY, et. }<br>al., }<br>}<br>Defendants. | Case No.: 5:17-cv-01934-LCB |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Montgomery is a member of the Board of Trustees (the "Board") of Alabama Agricultural & Mechanical University (the "University"). (Doc. 25 ¶ 6.) Plaintiff brings this action against defendants former Alabama State Representative Oliver Robinson, Dr. Andrew Hugine (the University's President), the Board, and eight members of the Board: Kevin Ball, Ginger Harper, Dr. Hattie Myles, Perry Jones, Chris Robinson, Andre Taylor, Velma Tribue, and Dr. Jerome Williams (collectively, the "Trustees"). (*Id.* at 1-2.)

Plaintiff alleges that he spoke about issues concerning the University, and, as a result, certain defendants retaliated against him, defamed him, and filed a false government report about him. (*Id.* ¶¶ 42-55.) Plaintiff asserts a claim under 42

U.S.C. § 1983 for First Amendment retaliation (*id.* ¶¶ 42-47), a state law defamation claim (*id.* ¶¶ 48-52), and a claim asserting a violation of Alabama Code §§ 36-25-24(c) and 36-25-27(a)(4), which govern a public employee's filing of a complaint against another public employee (*id.* ¶¶ 53-55).

This case comes before the Court on Oliver Robinson's motion to dismiss (doc. 30) for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim against him upon which relief can be granted pursuant to Rule 12(b)(6). (Doc. 30 at 1-2.)[1]

For the reasons explained below, the Court grants Oliver Robinson's motion to dismiss for lack of subject-matter jurisdiction insofar as it requests dismissal pursuant to Rule 12(b)(1), and denies as moot the motion to dismiss insofar as it requests dismissal for failure to state a claim pursuant to Rule 12(b)(6).

## I. MOTION TO DISMISS STANDARD[2]

Rule 12(b)(1) permits a defendant to move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint."

---

[1] In his motion to dismiss, Oliver Robinson also requested that the Court stay discovery pending the Court's disposition of his motion to dismiss. (Doc. 30 at 12-14.) On March 3, 2018, the Court granted this request and stayed the proceedings during the pendency of the Court's consideration of the defendants' motions. (Doc. 35.)

[2] The Court only states the standard for addressing a Rule 12(b)(1) motion to dismiss because, for the reasons described herein, the Court does not reach the merits of Oliver Robinson's Rule 12(b)(6) motion.

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." *Id.* (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)).

## II.  FACTUAL BACKGROUND

In 2006, Plaintiff was appointed to the Board, and in 2014, he was reappointed to serve a term expiring on January 31, 2020. (Doc. 25 ¶¶ 6-7.) In 2006, Plaintiff was appointed to be the Chair of a board committee, and in 2007, he was appointed to be the Chair of another board committee. (*Id.* ¶ 7.) He worked on both committees until 2009. (*Id.* ¶ 7.) In 2009, Dr. Hugine became the University's President (*id.* ¶ 9), and Kevin Rolle became the Executive Vice-President (*id.* ¶ 10).

From 2009 to 2015, Plaintiff alleges that he learned of various questionable financial expenditures, including a payment to Mr. Rolle for moving expenses in the amount of $6500, as well as a $75,000 monthly expense for private auditors. (*Id.* ¶ 12.) Plaintiff raised his concerns about these expenditures with the Board and the press. (*Id.* ¶ 12.)

In August of 2011, the Board, over Plaintiff's objections, passed a resolution to revise the University's bylaws. (*Id.* ¶ 29.) Plaintiff raised his concerns about the resolution with the Board, the University's counsel, and the press. (*Id.* ¶¶ 29 & 31.)

3

In 2014, Plaintiff asked Alabama's Chief Examiner of Public Accounts to audit the University's finances. (*Id.* ¶ 13.) In January of 2015, a state audit report was released and found that the receipt for the moving expenses submitted by Mr. Rolle was fraudulent; the state audit report also included several findings and provided recommendations to the University to achieve financial compliance. (*Id.* ¶ 14.) Plaintiff raised his concerns about the state audit report and other issues with the Board, Dr. Hugine, the University's counsel, and the press. (*Id.* ¶ 15.) Dr. Hugine asked Plaintiff to "cease to talk about the issue." (*Id.* ¶ 16.) In October of 2015, Mr. Rolle was indicted with respect to the moving expenses receipt. (*Id.* ¶ 17.)

According to plaintiff, Dr. Hugine later sought to rebut the state audit report, and the Board, over Plaintiff's objections, passed a resolution supporting Dr. Hugine's rebuttal. (*Id.* ¶ 22.) Plaintiff publicly requested that the Board rescind the resolution and that the members who had vote for the resolution resign. (*Id.*) The Board did not act upon the request. (*Id.*) Plaintiff raised his concerns about the resolution, the state audit report, and the University's private auditors with the Governor's office and the press. (*Id.*)

According to Plaintiff, some of the Board's members began a campaign of harassment against him due to his speaking out on matters of public concern. (*Id.* ¶ 25.)

In early 2015, Plaintiff received letters purporting to be from the Alabama Ethics Commission accusing him of misconduct. (*Id.* ¶ 26.) Plaintiff alleges that these letters were false and designed to inflict emotional distress on him. (*Id.*)

On October 30, 2015, the Board, over Plaintiff's objections, renewed Dr. Hugine's contract. (*Id.* ¶ 18.) Plaintiff raised his concerns about the contract renewal with the Governor's office. (*Id.* ¶ 18.)

On November 16, 2015, Oliver Robinson sent a letter to Mr. Taylor, a member of the Board, accusing Plaintiff of rude and disruptive behavior. (*Id.* ¶ 28.) Plaintiff asserts that, in addition to being defamatory and severely harming his reputation, it was done in retaliation for speaking out on matters of public concern regarding holding Dr. Hugine's administration accountable. (*Id.*)

In December of 2015, Plaintiff requested certain documents of Dr. Hugine's in connection with his ongoing attempt to hold the administration accountable with respect to finances. (*Id.* ¶ 32.) Additionally, Plaintiff alleged that on October 30, 2015, he requested a copy of all contracts that Dr. Hugine had signed and given to members of the University staff. (*Id.* ¶ 32). Plaintiff was told that he would have to seek the approval of the Board before he could receive a copy of the contracts; plaintiff was rebuffed by several members of the Board and his requests were denied. (*Id.*)

Plaintiff also raised concerns about certain board members being ineligible to serve on the Board. In particular, Plaintiff raised concerns about Dr. Myles and Mr. Jones. (*Id.* ¶ 34.) Plaintiff raised his concerns about board member eligibility with the Governor's office and the press. (*Id.* ¶¶ 34-35.) In response, Dr. Hugine and the other Board members "harass[ed] him and accuse[d] him of operating outside of protocol" and not in a "cooperative spirit." (*Id.* ¶ 35.)

In 2016, a second state audit report was issued by state examiners. It found that many of the findings issued in the initial state audit report had not been corrected. (*Id.* ¶ 37.) Plaintiff spoke about the state auditor's report, and other issues, with the press. (*Id.* ¶ 38.)

On February 16, 2016, the Board voted on a resolution in favor of censure of Plaintiff. (*Id.* ¶ 40.)

Additionally, according to plaintiff, Dr. Williams sent a letter on behalf of himself, the remaining members of the Board, and Dr. Hugine to the Alabama Ethics Commission; the letter falsely charged Plaintiff with purported ethics violations by Plaintiff, including harassment and false claims that Plaintiff demanded that the University "award contracts worth millions through a business partner." (*Id.* ¶ 41.)

## III. ANALYSIS

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

Oliver Robinson argues that the Court should decline to exercise supplemental jurisdiction over the state law defamation claim as it relates to his conduct. (Doc. 30 at 7.) Oliver Robinson argues that there is no causal, factual, or legal connection between the Section 1983 First Amendment retaliation claim and the defamation claim against him. (*Id.* at 6.) Oliver Robinson also argues that the judicial policies that promote judicial economy and fairness do not support exercising supplemental jurisdiction, because the case has not progressed very far and litigating the defamation claim would prolong and complicate the case. (*Id.* at 6-7.)

Federal law enables courts to exercise supplemental jurisdiction over state claims:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The United States Supreme Court has explained that for a court to exercise supplemental jurisdiction over a plaintiff's state law claim, "[t]he state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (cited with

approval in *Turbeville v. Financial Indus. Reg. Auth.*, 874 F.3d 1268, 1275 n.7 (11th Cir. 2017)). A court, determining whether a state claim arises from a common nucleus of operative fact as a federal claim, considers whether the state and federal claims "will involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar facts." *Palmer v. Hospital Auth. of Randolph Cnty.*, 22 F.3d 1559, 1563-64 (11th Cir. 1994); *see also Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) ("In deciding whether a state law claim is part of the same case or controversy as a federal issue, we look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence.").

In Plaintiff's Section 1983 First Amendment retaliation claim, he asserts that the Trustees and Dr. Hugine retaliated against Plaintiff because he chose to speak on matters of public concern. (Doc. 25, ¶ 45.) In particular, Plaintiff alleges that these defendants played a role in his removal from board committees, in censuring him, and in filing false ethics complaints against him, among other things. (*Id.* ¶¶ 44 & 46.) On the other hand, in Plaintiff's defamation claim against Oliver Robinson, he alleges that Oliver Robinson provided Mr. Taylor with a letter that was "knowingly false or was made with reckless disregard as to whether the statements therein were true," for the purpose of retaliating against Plaintiff for

speaking out with respect to the accountability of Dr. Hugine's administration. (*Id.* ¶¶ 28, 49.)

Plaintiff's Section 1983 First Amendment retaliation claim does not arise out of the same common nucleus of operative facts as Plaintiff's defamation claim directed at Oliver Robinson. First, based on the allegations in the Amended Complaint, the Court finds that, while Mr. Taylor could be a witness for both claims, his testimony for each claim would have no apparent factual overlap with the other claim.

Second, Plaintiff argues in response to the Motion to Dismiss that Oliver Robinson defamed Plaintiff because Oliver Robinson was retaliating against Plaintiff for exercising free speech rights. (Doc. 38 at 19.) In the Amended Complaint, however, Plaintiff does not assert a Section 1983 First Amendment retaliation claim against Oliver Robinson. (*See* Doc. 25, ¶¶ 42-47.) Moreover, Plaintiff does not show that he will need the same witnesses, evidence, and/or determinations of fact to demonstrate his defamation claim against Oliver Robinson and to prove the Section 1983 First Amendment retaliation claim. Thus, Plaintiff's argument is unpersuasive.

Third, Plaintiff argues that "[the defamation] occurred around the same time as other adverse activity, and it involves many of the same witnesses, and some of the same evidence." (Doc. 38 at 19.) Temporal proximity is not a factor that courts

9

should consider in evaluating whether two claims derive from a common nucleus of operative facts. *See Palmer*, 22 F.3d at 1563-64 (holding that courts, examining whether a state claim arises from a common nucleus of operative fact as a federal claim, consider whether the claims involve the same witnesses, evidence, and fact determinations.). Thus, Plaintiff's reference to the temporal proximity of the facts underlying the defamation claim and Section 1983 First Amendment retaliation claim is irrelevant. Plaintiff's remaining argument is conclusory. He fails to identify either witnesses or evidence that apply to both claims. (*See* Doc. 38 at 19-20.)

Fourth, Plaintiff asserts that the defamation claim "derives from a common nucleus of operative fact concerning the harassment and acts of defamation against Plaintiff for the exercise of his First Amendment right." (Doc. 38 at 19.) Plaintiff has not identified any specific facts of harassment to apply to both claims. *(Id.)* In other words, this statement is conclusory.

Finally, citing 28 U.S.C. § 1367, Plaintiff argues that "judicial economy, convenience and fairness and avoidance of multiplicity of litigation" will be furthered by addressing the defamation and retaliation claims together. (Doc. 38 at 20.) 28 U.S.C. § 1367(c) identifies four conditions when a court may decline to exercise supplemental jurisdiction: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over

which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). The United States Court of Appeals for the Eleventh Circuit has explained:

> While § 1367(c) permits a court to dismiss any state law claims where the court has dismissed all the claims over which it had original jurisdiction, the court also can consider other factors. Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction.

*Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

The *Baggett* factors are not applicable here, however, because the Court has not employed Section 1367(c) in dismissing the state claim. Instead, as stated above, the Court, relying on Section 1367(a), finds that no common nucleus of operative facts exists between the Section 1983 First Amendment retaliation claim and the defamation claim against Oliver Robinson. Assuming, *arguendo*, that the *Baggett* factors are applicable, Plaintiff does not explain how the exercise of supplemental jurisdiction over the defamation claim furthers judicial economy, convenience, fairness, and comity. Thus, Plaintiff's argument regarding the *Baggett* factors lacks merit for this additional reason.

In sum, the Court finds that there is no common nucleus of operative facts between the Section 1983 First Amendment retaliation claim and the defamation

claim. For this reason, Oliver Robinson's motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) is due to be granted.

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

The Court shall deny as moot Oliver Robinson's motion to dismiss to the extent that it requests dismissal for failure to state a claim pursuant to Rule 12(b)(6) because the Court declines to exercise supplemental jurisdiction over the claim as it relates to Oliver Robinson, *see supra*, III.A.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Oliver Robinson's motion to dismiss (doc. 30) is GRANTED insofar as it requests dismissal for lack of subject-matter jurisdiction (doc. 30) pursuant to Rule 12(b)(1). The motion to dismiss is DENIED AS MOOT insofar as it seeks dismissal for failure to state a claim against him upon which relief can be granted pursuant to Rule 12(b)(6).

IT IS FURTHER ORDERED that the defamation claim against Oliver Robinson is DISMISSED WITHOUT PREJUDICE and without prejudice to Plaintiff's right to re-file in the appropriate court.

**DONE** and **ORDERED** this May 23, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE