# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JAMES D. MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  5:17-cv-1934-LCB |
| | ) | |
| DR. ANDREW HUGINE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Dr. Andrew Hugine, Jr. ("Dr. Hugine"), individually and in his official capacity as president of Alabama Agricultural and Mechanical University ("Alabama A&M"), in addition to Jerome Williams ("Trustee Williams"), Andre Taylor ("Trustee Taylor"), Chris Robinson ("Trustee Robinson"), Kevin Ball ("Trustee Ball"), Perry D. Jones ("Trustee Jones"), Velma Tribue ("Trustee Tribue"), Dr. Hattie M. Myles ("Trustee Myles"), and Ginger Harper ("Trustee Harper") individually and in their official capacities as members of the Board of Trustees of Alabama A&M (collectively, the "Trustees"), have filed a Motion to Dismiss (doc. 32) pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.[1]   Plaintiff James D. Montgomery ("plaintiff") has filed a

---

[1] These are the only defendants remaining in this action.  The Court dismissed defendant Oliver Robinson from this action on May 23, 2019 (doc. 44).  Additionally, plaintiff voluntarily dismissed defendant Board of Trustees of Alabama A&M (as an entity) from this action.  (Docs.

response, and defendants have filed a reply. Therefore, the Motion to Dismiss is ready for review. For the reasons stated herein, the Motion to Dismiss is granted.

## I.    BACKGROUND

Plaintiff is member of the Board of Trustees of Alabama A&M (the "Board"). Plaintiff's lawsuit is based on what he coins a "campaign of harassment" against him by Dr. Hugine and the Trustees as a result of plaintiff engaging in protected speech regarding various issues involving Alabama A&M. (Doc. 25, p. 8). In particular, plaintiff asserts, in the operative amended complaint (doc. 25), the following claims: (1) a claim for First Amendment retaliation pursuant to 42 U.S.C. § 1983 against defendants in their official and individual capacities; (2) a defamation claim against defendants in their individual capacities under Alabama law; and (3) a claim against Trustee Williams in his individual capacity for violation of Sections 36-25-24 and 36-25-27(a)(4) of the Alabama Code.

Plaintiff's allegations in the amended complaint are not in chronological order. In attempt to more efficiently and clearly address the parties' arguments, the Court organizes, to the extent that it can, plaintiff's allegations by topic.

---

26, 28). Therefore, the Court will not consider these dismissed defendants or the claims against them in this memorandum opinion and order. Moreover, any reference to "defendants" in this memorandum opinion and order is to the remaining defendants in this action, *i.e.*, Dr. Hugine and the Trustees.

<u>Plaintiff's appointment to the Board and to board committees</u>

Plaintiff was appointed to the Board in 2006. (Doc. 25, p. 4). In 2006, plaintiff was appointed chair of the Business and Finance Committee, and in 2007 he was appointed chair of Academic Affairs. (*Id*.). In 2014, plaintiff was reappointed to the Board by then governor, Robert Bentley. (*Id*.). Plaintiff's term expires in 2020. (*Id*.).

Plaintiff alleges that, in 2009 when O.D. Lanier became chairman of the Board, he was no longer appointed to any board committee. (*Id*.). Also, in 2009, Dr. Hugine began to serve as president of Alabama A&M, and Kevin Rolle was hired as executive vice president. (*Id*.).

<u>State audit report and preceding events</u>

From 2009 to 2015, plaintiff alleges that he learned of various questionable financial expenditures, including a payment of $6,500 to Rolle for moving expenses, as well as a $75,000.00 monthly expense for private auditors. (Doc. 25, p. 5). Plaintiff questioned these expenditures in board meetings, outside of board meetings, and with the press. (*Id*.).

In 2014, because of these alleged financial improprieties, plaintiff requested the state chief examiner of public accounts audit Alabama A&M's finances. (*Id*.). A state audit report was released in January 2015. The state audit report found that

the receipt for $6,500 submitted by Rolle was fraudulent. (*Id*. at 6).[2] The state

audit report also made fourteen findings, as well as some recommendations. (*Id*. at

6-7). The state audit report was given to the Alabama Attorney General. (*Id*. at 6).

Plaintiff asserts that before and after the state audit report, he spoke about this issue

to the Board, Dr. Hugine, the Alabama A&M legal office, and the press. (*Id*.).

### Dr. Hugine's rebuttal of the findings in the state audit report

Plaintiff alleges that Dr. Hugine attempted to rebut the fourteen findings in

the state audit report. (*Id*. at 7). Plaintiff publicly objected to this rebuttal. (*Id*.).

The Board passed a resolution supporting Dr. Hugine's rebuttal. (*Id*. at 8).

Plaintiff publicly called for rescission of the resolution, and that the board

members who had voted in favor of the resolution resign. (*Id*.). The Board did not

take up plaintiff's request. (*Id*.).

In October 2015, plaintiff contacted the press and the Governor's office

regarding his request that the resolution be rescinded; plaintiff also spoke out about

the private auditors and related issues with them. (*Id*.).

### Second audit report

According to plaintiff, in January 2016, a second audit report was issued by

state examiners; the second audit report found that many of the findings issued in

the initial audit had not been corrected. (Doc. 25, p. 12). Plaintiff spoke to the

---

[2] In October 2015, plaintiff asserts that Rolle was indicted for theft and possession of a forged instrument in connection with the moving expenses receipt. (*Id*. at 6).

press about the second audit report.  Within that context, plaintiff asserts that he also spoke about how money had been handled at Alabama A&M, the lack of alumni members on the Board, and the power retained by the president.  (*Id*. at 12-13).

### Dr. Hugine's failure to administer the Trust for Education Excellence

Plaintiff "spoke[] out" about Dr. Hugine's failure to administer the Trust for Education Excellence consistent with the court decree that governed it.  (Doc. 25, p. 8).

### Code of conduct in updated bylaws

In August 2011, the Board, "against the approval of Plaintiff," updated its bylaws.  (Doc. 25, p. 10).  Plaintiff asserts that the bylaws included, for the first time, a code of conduct applicable to members of the Board.  (*Id*).  Plaintiff further alleges that the Alabama Legislature did not authorize the Board to take any action or exercise authority over its members.  (*Id*.).  Plaintiff raised this issue with the Board, Alabama A&M's legal counsel, and the press.  (*Id*.).

### Plaintiff's requests for documents

In October 2015, plaintiff requested from Dr. Hugine and Trustee Taylor, the president pro tempore, a copy of all contracts that Dr. Hugine had signed and given to members of Alabama A&M staff.  (Doc. 25, pp. 10-11).  Additionally, in December 2015, plaintiff states that he requested "certain documents of Dr. Hugine

in connection with his ongoing attempt" to hold Dr. Hugine's administration accountable with respect to finances. (*Id*. at 10). Plaintiff was told by Trustee Williams that he would need to seek approval of all board members before he would be able to receive the contracts. (*Id*. at 11). Plaintiff asserts that his requests were denied. (*Id*.).

Plaintiff's concerns regarding ineligibility of certain board members

Plaintiff raised concerns with the Governor's office and the press regarding the ineligibility of Trustee Myles and Trustee Jones to serve on the Board. (Doc. 25, p. 11). Plaintiff asserts that the response by Dr. Hugine and the "other members of the Board" was to harass him and accuse him of operating outside of protocol "by contacting the Governor's office and others." (*Id*. at 11-12). Plaintiff further asserts that "[t]hey" falsely accused him of not working in a cooperative spirit to advance the mission of Alabama A&M. (*Id*.). Plaintiff asserts that he was ultimately forced to communicate with the Governor's office and press in an attempt to get these issues addressed. (*Id*.). Plaintiff alleges that Dr. Hugine accused him of being "harassing and intimidating" by making these requests for information. (*Id*.).

Renewal of Dr. Hugine's contract

In October 2015, Dr. Hugine's contract was renewed over plaintiff's objections. (*Id*. at 7). In November 2015, plaintiff complained to the Governor's

office and others regarding the illegal manner in which the contract renewal was raised in the board meeting on October 30, 2015. (*Id*.). The Governor's office looked into the allegations surrounding the renewal of Dr. Hugine's contract and requested certain information from the Board. (*Id*.).

Alleged acts of retaliation

Plaintiff asserts that in January 2016, Trustee Ball published a memorandum regarding a proposed censure of plaintiff. (Doc. 25, p. 13). In February 2016, plaintiff asserts that the Board voted on a resolution in favor of censuring him. (*Id*.). Plaintiff alleges that these acts were outside of the Board's authority and done in retaliation for speaking out on matters of public concern. (*Id*.).

Additionally, plaintiff asserts that Trustee Williams "on behalf of himself[,] []the remaining members of the Board," and Dr. Hugine, submitted a letter to the Alabama Ethics Commission ("AEC") complaining of purported ethics violations by plaintiff, including harassment and false claims that plaintiff demanded that Alabama A&M "award contracts worth millions of dollars through a business partner." (*Id*.). Plaintiff avers that these charges were "knowingly and utterly false, malicious, and wholly unfounded, and constituted both defamation and a violation of the Alabama ethics statute." (*Id.*).

Allegations of harassment by unnamed people

Plaintiff alleges that, due to his speaking out on matters of public concern, "some of the Board members began a campaign of harassment against him." (Doc. 25, p. 8). Plaintiff asserts that articles were published accusing him of being against historically black colleges and universities. (*Id.* at 9). Plaintiff also states that "he was falsely accused in the press of trying to close Historic Black Colleges and Universities in Alabama." (*Id.*).

Plaintiff also alleges that he received forged and false letters from the AEC accusing him of misconduct in a prior political campaign. (*Id.*). After writing to the AEC regarding the letters, the AEC advised that there were no pending ethics complaints against him at that time. (*Id.*).

## II.    STANDARD OF REVIEW

Rule 12(b)(1) permits a defendant to move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." *Id.* (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)).

Rule 12(b)(6) permits a party to move to dismiss a complaint for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Thus, the Supreme Court has "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 567 (2007)).

## III. DISCUSSION

Defendants make several arguments in support of their Motion to Dismiss. First, defendants argue that sovereign immunity through the Eleventh Amendment to the United States Constitution bars the First Amendment retaliation claim against them in their official capacities. Second, defendants argue that qualified immunity shields them from the First Amendment retaliation claim against them in their individual capacities. Third, defendants argue that plaintiff has failed to state a First Amendment retaliation claim against them. Defendants also make substantive arguments with respect to the state-law claims; however, as discussed in more detail below, the Court finds no need to address those arguments. Thus, the Court will address each argument with respect to the First Amendment retaliation claim in turn.

### A. Consideration of bylaws

Before the Court addresses the substance of the parties' argument, it will first address the issue of whether it can consider the bylaws, which are attached as an exhibit (doc. 33-1) to defendants' brief supporting the Motion to Dismiss.

"'In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.'" *Speaker v. U.S. Dept. of Health and Human Serv. Ctrs for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)). The Court finds that the bylaws are referred to and central to plaintiff's claims. In the amended complaint, plaintiff alleges that the censure was done in accordance with the "Code of Conduct" in the updated bylaws. (Doc. 25, p. 10). Furthermore, the authenticity of the bylaws is not challenged by plaintiff. Instead, plaintiff argues that the bylaws are illegitimate and "outside of the enabling legislation and therefore inconsistent with law." (Doc. 38, p. 7. *But cf.* Doc. 25, p. 10 (alleging that the "Code of Conduct," as opposed to the bylaws, was not sanctioned or allowed by the Alabama legislature)). However, this argument is not directed at the *authenticity* of the bylaws. *Cf.* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Indeed, a copy of the bylaws is publicly available on Alabama A&M's website. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) ("The district court properly took judicial notice of the documents in Horne's first case, which were public records that were 'not subject to reasonable dispute'

because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (citing Fed. R. Evid. 201(b)). Therefore, the Court will, to the extent necessary, consider the bylaws.

**B.  Plaintiff's First Amendment retaliation claim against defendants in their official capacities is barred by sovereign immunity through the Eleventh Amendment.[3]**

Defendants argue that the official capacity claims against them should be dismissed because they are barred by sovereign immunity through the Eleventh Amendment. The Eleventh Amendment to the United States Constitution states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the express language of the amendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir.

---

[3] To the extent defendants seek dismissal of their official capacity claims based on sovereign immunity, the Court construes their Motion to Dismiss as one brought pursuant to Rule 12(b)(1). *See McClendon v. Ga. Dep't. of Community Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) ("Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III . . . federal courts lack jurisdiction to entertain suits that are barred by the Eleventh Amendment.").

1990) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)). Nonetheless, the Supreme Court has found that sovereign immunity through the Eleventh Amendment is not absolute.

In particular, the Eleventh Circuit has recognized that there is a long and well-recognized exception to sovereign immunity for suits against state officers [in their official capacities] seeking *prospective* equitable relief to end *continuing* violations of federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (emphasis in original) (citing *Ex parte Young*); *see also Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) ("Consequently, *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation."). "Therefore, the Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief." *Pryor*, 180 F.3d at 1337. The Eleventh Circuit has recognized that equitable relief in the form of reinstatement of employment constitutes prospective injunctive relief that falls

within the scope of the *Ex parte Young* exception and is not barred by the Eleventh Amendment. *Lane v. Cent. Alabama Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014); *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 3 F.3d 1482, 1485 (11th Cir. 1993), *reh'g en banc granted, opinion vacated*, 19 F.3d 1370 (11th Cir. 1994), and *on reh'g*, 28 F.3d 1146 (11th Cir. 1994) ("To the extent that [plaintiff] still seeks the prospective relief of reinstatement, his claim against Covington in his official capacity is not barred by the Eleventh Amendment.").

The *Ex parte Young* doctrine cannot, however, be used to compel an executive official to undertake a discretionary task. *Seminole Tribe of Fla. v. State of Fla.*, 11 F.3d 1016, 1028-29 (11th Cir. 1994). Nor may the *Ex parte Young* doctrine be used to force a state official to perform an action that he or she lacks the authority to perform. *See Pryor*, 180 F.3d at 1342 ("[F]ederal courts have refused to apply *Ex parte Young* where the officer who is charged has no authority to enforce the challenged statute."). Indeed, the Eleventh Circuit has found that "unless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate." *Id*. at 1341.

Plaintiff states that he is only seeking injunctive relief against defendants in their official capacities, namely that they reappoint plaintiff to the board committees, remove the censure, and rescind the false ethics complaint. (Doc. 38, p. 3).

Defendants, on the other hand, argue that plaintiff complains of past discrete acts of First Amendment retaliation and that the injunctive relief requested – reinstatement to board committees, removal of the censure, and rescinding the ethics complaint – are discretionary tasks. Defendants further argue that the Eleventh Circuit has never extended the *Ex parte Young* doctrine to afford a reinstatement remedy or other prospective injunctive relief to a person like plaintiff, *i.e.*, an appointed, non-employee board member. The Court will now address each instance of requested injunctive relief by plaintiff.

### 1.    Appointment to board committees

The Court will dismiss the First Amendment retaliation claim against defendants in their official capacities to the extent that it requests appointment or reappointment to a board committee. First, only the president pro tempore may make appointments to committees. (Doc. 33-1, p. 17 ("The President Pro Tempore shall appoint such committees as may be authorized by the Board By-laws or special or ad hoc committees as deemed desirable . . . ."), p. 18 ("Committee members and chairs of each committee, with the exception of the Executive Committee which is chaired by the President Pro Tempore pursuant to the Bylaws, shall be appointed by the President Pro Tempore."). Thus, to the extent that any claim would lie at all, it would only be against Trustee Taylor, as he is only person in the amended complaint even identified as serving as a president pro tempore.

(Doc. 25, pp. 3, 10 (identifying Trustee Taylor as president pro tempore in relation to certain allegations in the amended complaint); *see also Boglin v. Bd. of Trustees of Alabama Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1266 (N.D. Ala. 2018) (finding that plaintiff failed to plead or otherwise establish that the individual members of the board are able to directly provide the injunctive relief that she requests and therefore dismissing the official capacity claims against them.).  Even beyond that, however, the Court finds that appointment to a board committee in this context is a discretionary act and is not like a compensated employee seeking reinstatement to a paid position.  Indeed, plaintiff's service on the Board is by appointment and is unpaid.  *See* Ala. Code § 16-49-20(a)(5)(b)(1) (stating that trustees are appointed by the Governor and confirmed by Senate), (a)(8) ("No trustee shall receive any pay or emolument other than his or her actual expenses incurred in the discharge of his or her duties.").  Plaintiff has not offered the Court any law to show otherwise.  Moreover, plaintiff has not even alleged facts showing that he was no longer appointed to board committees due to retaliation for exercising his First Amendment rights; in fact, all the Plaintiff alleges is that, after O.D. Lanier, who is not a defendant, became chairman, he was no longer appointed to any board committees.  (Doc. 25, p. 2).

## 2. Removal of censure

The Court next addresses plaintiff's request for removal of censure. Although this appears to be more along the lines of prospective relief, the Court finds that sovereign immunity bars plaintiff's request. For one, it is not even clear who has the authority to remove the censure. The Board may "by majority vote" censure a member; however, it is not clear how censure is removed. (Doc. 33-1, p. 13). Assuming that censure could be removed by a majority vote of the Board, the Court is loath to order such a remedy in the absence of case law. Even more, it is not clear whether a majority of the Board are defendants in this action. On top of that, it appears that Dr. Hugine, who has no role in censuring a trustee, would not have any role in removing censure. (Doc. 33-1, p. 13); *see Ingram v. Buford City Sch. Dist.*, No. 118CV03103ELRWEJ, 2018 WL 7079179, at *7 (N.D. Ga. Dec. 17, 2018) ("Because neither Dr. Hamby nor Ms. Pulley could provide the injunctive relief that Plaintiff requests, there is no need for them to remain in this case in their official capacities."). While the Court is skeptical of defendants' argument that this is a discrete past act, as a censure as a form of retaliation could have a continuing effect, it finds that ordering removal of censure would require the undertaking of a discretionary task. Moreover, plaintiff has failed to state against whom such a claim should proceed. *See Boglin*, 290 F. Supp. 3d at 1266 (finding that plaintiff failed to plead or otherwise establish that the individual

members of the board are able to directly provide the injunctive relief that she requests and therefore dismissing the official capacity claims against them.).

### 3. Rescinding ethics complaint

Finally, to the extent that one can request injunctive relief in the form of rescinding an ethics complaint, any such claim could only possibly be against Trustee Williams. Although plaintiff alleges that Trustee Williams filed the ethics complaint on behalf of himself, Dr. Hugine, and the Trustees, it is clear that only Trustee Williams actually filed the ethics complaint. Presumably Trustee Williams would be the only one who could rescind it, although the Court notes that the Alabama Code provisions governing ethics complaints do not address this issue. Thus, it is not clear that Trustee Williams could even rescind his complaint. *Cf.* Ala. Code. § 36-25-4(d) (stating that complaint may only be filed by a person who has credible and verifiable information, and that *if the director determines* that the complaint does not allege a violation or that reasonable cause does not exist, *the charges shall be dismissed*), (i) (providing for dismissal of complaint if *commission* does not find probable cause). But even beyond that, the removal of an ethics complaint, provided that it can even be done, is not akin to reinstatement to a former position or the expungement of disciplinary or arrest records. *See, e.g.*, *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (finding that requests for expungement of "F" grade and plagiarism conviction constitute a continuing injury

to plaintiff and relate to an ongoing violation of federal law); *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992) (affirming district court's decision to award prospective relief against defendants in form of expungement of disciplinary records); *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986) ("The injunctive relief requested here, reinstatement and expungement of personnel records, is clearly prospective in effect and thus falls outside the prohibitions of the Eleventh Amendment."); *Buckner v. Williamson*, No. 3:06-CV-79 (CDL), 2008 WL 2415265, at *8 (M.D. Ga. June 12, 2008) ("Plaintiff here arguably seeks some prospective injunctive relief that is directly related to the constitutional violations she alleges. Specifically, Plaintiff seeks the expungement of her arrest record."). *But cf. Nicholl v. Attorney General*, 2019 WL 1772877, at *2 (11th Cir. April 23, 2019) (finding that plaintiff failed to allege continuing violation where he only alleged past conduct in asserting that he received a "B" grade that should have been an "A"). The *filing* of an ethics complaint does not equate a *conviction or record* demonstrating an ethics violation actually occurred. *See* Ala. Code. § 36-25-4.1 (stating that no complaint shall be made available to the public or available on the internet until disposition of the matter and that, if the complaint is dismissed or found not to have probable cause, only the disposition, and not the complaint, may be made available).

In sum, the Court agrees with defendants that plaintiff's First Amendment retaliation claim against defendants in their official capacities is barred by sovereign immunity. Therefore, the Court will grant the Motion to Dismiss insofar as it requests dismissal of the First Amendment retaliation claim against defendants in their official capacities.[4]

### C. Plaintiff has failed to state a First Amendment retaliation claim against defendants in their individual capacities.

Defendants argue that the amended complaint is a "shotgun pleading." (Doc. 33, p. 26). The Eleventh Circuit has identified four rough categories of shotgun pleadings:

> [1] a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint[;] . . . [2] a complaint that [is] replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action[;] . . . [3] one that commits the sin of not separating into a different count each cause of action or claim for

---

[4] Defendants argue, albeit in a footnote, that Eleventh Amendment immunity applies regarding of whether the claim is based on state or federal law. (Doc. 33, p. 8 n.4) (citing *Flood v. Ala. Dep't of Indus. Rels.*, 948 F. Supp. 1535, 1542 (M.D. Ala. 1996), *aff'd sub nom. Flood v. Alabama Dep't of Indus. Relations*, 136 F.3d 1332 (11th Cir. 1998)). Thus, defendants argue that sovereign immunity also bars plaintiff's state-law claims. In *Flood*, the court found that, where "the relief sought affects the state or where the state is, in effect, the party sued, as in a suit against a state official in his official capacity, the eleventh amendment bars any supplemental state claims." 948 F. Supp. at 1542. The court in *Flood* concluded that two defendants were therefore immune from the state-law claim to the extent that the plaintiff had sued them in their official capacities. In the present case, plaintiff has sued defendants in their *individual* capacities under state law. Therefore, the Court does not find *Flood* persuasive. Additionally, the Court, as discussed in more detail below, declines to exercise supplemental jurisdiction over the state-law claims.

relief[;] . . . [4] [a complaint] asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323. "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996). The Eleventh Circuit has "roundly, repeatedly, and consistently" condemned shotgun pleadings. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 980-81 n.54 (11th Cir. 2008) (collecting cases), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

The most obvious issue to the Court with the amended complaint is that it, in some respects, falls into the second and fourth categories of shotgun pleadings identified by the Eleventh Circuit. That is, with respect to some defendants, plaintiff fails to identify which of the defendants are responsible for which acts or omissions; furthermore, the amended complaint contains conclusory, vague, and

immaterial facts not obviously connected to any particular cause of action. By way of one example, plaintiff, without identifying any defendants as the perpetrator, alleges that he was falsely accused in the press and that he received forged and false letters from the AEC. (Doc. 25, p. 8). Plaintiff also, without distinguishing among defendants, accuses them all of removing him from board committees, censuring him, and knowingly bringing a false ethics complaint against him. (*Id.* at 14). In addressing these issues, the Court finds it helpful to first consider the standard of proof for a First Amendment retaliation claim.

"To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005); *see also Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019) ("To state a claim for First Amendment retaliation, a plaintiff must allege that he [or she] engaged in protected speech, that the official's conduct adversely affected the protected speech, and that a causal connection exists between the speech and the official's retaliatory conduct.").

However, a public employee's[5] freedom of speech is not absolute. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) (holding that the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern). "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti*, 547 U.S. at 418. "Public employees, moreover, often occupy trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." *Id.* at 419. At the same time, a public employee is nonetheless a citizen and entitled to some level of protected speech. *Id.* Thus, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.* The Eleventh Circuit has framed the test to determine whether a public employee was retaliated against for engaging in protected speech as follows:

> "To set forth a claim of retaliation, a public employee
> must show: (1) she was speaking as a citizen on a matter

---

[5] Plaintiff raises, albeit tangentially and non-substantively, the question of whether he is even a public employee. (Doc. 38, p. 9); *see also Phelan v. Laramie County Comm. Coll. Bd. of Trustees*, 235 F.3d 1243 (10th Cir. 2000) (finding that *Pickering* analysis does not apply because board member was elected official, not employee). *But cf. McKinley v. Kaplan*, 262 F.3d 1146, 1149-50 (11th Cir. 2001) (applying the *Pickering* analysis to an unpaid, appointed board committee member). As discussed below, however, the Court confines it analysis to whether the alleged conduct even constituted an adverse employment action, and therefore does not reach this issue.

of public concern; (2) her interests as a citizen
outweighed the interests of the State as an employer; and
(3) the speech played a substantial or motivating role in
the adverse employment action." *Id.* "If the plaintiff
establishes these elements, the burden shifts to the
defendant to prove it would have made the same adverse
employment decision absent the employee's speech." *Id.*

*Leslie v. Hancock Cty. Bd. of Educ.*, 720 F.3d 1338, 1346 (11th Cir. 2013) (quoting

*Vila v. Padreon*, 484 F.3d 1334, 1339 (11th Cir. 2007)).

The parties focus their arguments on whether the three actions at issue –

failure to appoint plaintiff to board committees, censure, and filing of an ethics

complaint constituted adverse employment actions. Therefore, the Court will start

its analysis here, as there is no claim if there is no adverse employment action.

*See, e.g.*, *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir.

2005) (considering, as a preliminary matter, whether plaintiff was subjected to an

adverse employment action before determining whether a public official was

entitled to qualified immunity from First Amendment retaliation claim); *Akins v.

Fulton County*, 420 F.3d 1293, 1302, 1303 (11th Cir. 2005) (same). To be

considered an adverse employment action, the complained-of action must involve

an important condition of employment that would likely chill the exercise of

constitutionally protected speech. *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1300

(11th Cir. 2005). The Eleventh Circuit has determined that "a matter of law,

important conditions of employment include discharges, demotions, refusals to hire

or promote, and reprimands."  "In addition, any other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee' qualifies as an adverse employment action."  *Id*. (quoting, in part, *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000)).

### 1.    Failure to appoint to board committees

The Court finds that plaintiff has failed to state a First Amendment retaliation claim against Dr. Hugine in his individual capacity for failure to appoint or re-appoint him to a board committee.  The bylaws dictate that duty to the president pro tempore.   Additionally, the Court agrees with defendants that plaintiff has failed to state a claim against any of the Trustees who were not the president pro tempore in the two years preceding the filing of the complaint, as only the president pro tempore has the power to make board committee appointments.  *See Holt v. Valls*, 395 F. App'x 604, 605–06 (11th Cir. 2010) (finding that Section 1983 constitutional claims are subject to Alabama's two-year statute of limitations for personal injury actions).   The only person plaintiff has even identified in the amended complaint as a president pro tempore is Trustee Taylor, although plaintiff never states that Trustee Taylor either failed to appoint or removed him from a board committee.  In fact, it appears that plaintiff makes specific allegations with respect to board committees in only two places.  First in

paragraph 8, plaintiff states that when "O.D. Lanier became the Chairman of the Board in 2009, Plaintiff was no longer appointed to any Board Committee." (Doc. 25, p. 4). O.D. Lanier is not a defendant in this action. Plaintiff then conclusorily alleges in Count One of the amended complaint that Dr. Hugine and the Trustees, in taking the action of "removing Plaintiff from Board committees," violated the First Amendment. (*Id*. at 14). Therefore, the Court finds that plaintiff has not even stated a claim against any defendant, including Trustee Taylor, for violating his First Amendment rights by not appointing him to, or removing him from, a board committee. *See Iqbal*, 556 U.S. at 678 (finding that a complaint will not suffice if it tenders "'naked assertion[s] devoid of 'further factual enhancement'").

The Court will, in an abundance of caution, nonetheless consider whether a claim for First Amendment retaliation would lie against Trustee Taylor, the only identified president pro tempore in the amended complaint. Considering the allegations in the complaint, the Court finds that the alleged failure of Trustee Taylor to appoint or re-appoint plaintiff to any board committee does not constitute an adverse employment action in this case given the discretionary nature of such an appointment. (Doc. 33-1, p. 18 (president pro tempore shall make committee appointments). For one, plaintiff is not an employee of Alabama A&M; rather, he is an unpaid board member. Moreover, plaintiff's position as a board member was not affected by his non-appointment to some unspecified committee. *Cf. Allred v.*

*City of Carbon Hill, Ala.*, No. 6:13-CV-00930-LSC, 2014 WL 5426822, at \*6 (N.D. Ala. Oct. 24, 2014) ("Allred's non-reappointment effectively acted as a firing, since it concluded his employment with the Carbon Hill Police Department."). Finally, plaintiff has not alleged any causal connection between any alleged failure on the part Trustee Taylor to appoint plaintiff to a board committee and any protected speech. Therefore, the Court finds that plaintiff fails to state a claim against Trustee Taylor for his alleged failure to appoint plaintiff to any board committees for this additional reason.

Therefore, the Court will grant the Motion to Dismiss insofar as defendants request dismissal against of the First Amendment retaliation claim against Dr. Hugine and the Trustees in their individual capacities for the alleged failure to appoint plaintiff to board committees or for the removal thereof. *See McKinley v. Kaplan*, 262 F.3d 1146, 1151–52 (11th Cir. 2001) (finding that county commission could remove plaintiff from an appointed, unpaid position as a committee member without violating the First Amendment); *Rash-Aldridge v. Ramirez*, 96 F.3d 117, 119 (5th Cir. 1996) (affirming judgment of district court that removal of plaintiff, a city council member, from a planning organization due to her opposition and failure to support the city council's position did not violate the First Amendment).

## 2.      Censure

Plaintiff has also failed to state a First Amendment retaliation claim against Dr. Hugine in his individual capacity for censuring plaintiff because he would not have been involved in voting on same.  (Doc. 33-1, p. 13 ("*The Board* may then by *majority vote* censure the Trustee.") (emphasis added).  Additionally, plaintiff has also failed to state a claim with respect to any of the Trustees who were not involved in voting to censure plaintiff.  (*Id*.).  Giving plaintiff the benefit of the doubt, however, the Court will assume that the Trustees who were involved in voting in favor of censure are sued as defendants and will analyze the claim against them.

The Court finds that, as alleged, plaintiff fails to state a claim for First Amendment retaliation for the censure of him by the Trustees.   According to the bylaws, the consequence of censure is as follows:  "Should the Board censure the Trustee, formal notification of the censure shall be communicated to the Governor, as President of the Board, and to any separate recommendatory or appointive authority of the Trustee, *e.g*., the Nominating Committee . . . and the Senate of Alabama."  (Doc. 33-1, p. 13).   Thus, other than a communication of the censure to other entities, there is no punitive action taken as a result of censure.  Plaintiff does not allege that the censure of him prevented him from performing his duties as a member of the Board or affected his right to speak or vote at board meetings

or to speak to the media or the public. Consequently, the Court finds that, as alleged, the censure of plaintiff does not amount to an adverse employment action. *See, e.g.*, *Phelan v. Laramie Cty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243, 1247 (10th Cir. 2000) ("Based on the facts of this case, the Board's censure is clearly not a penalty that infringes Ms. Phelan's free speech rights. In censuring Ms. Phelan, Board members sought only to voice their opinion that she violated the ethics policy and to ask that she not engage in similar conduct in the future. Their statement carried no penalties; it did not prevent her from performing her official duties or restrict her opportunities to speak, such as her right to vote as a Board member, her ability to speak before the Board, or her ability to speak to the public."); *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994) (holding that plaintiff, a former city council member who criticized the mayor and the mayor's conduct, failed to state a claim under the First Amendment for the passage of a resolution and ordinance stating that plaintiff had violated the city charter's residency requirement and that plaintiff had never been qualified to hold office); *see also id*. ("A legislative body does not violate the First Amendment when some members cast their votes in opposition to other members out of political spite or for partisan, political or ideological reasons."); *Westfall v. City of Crescent City*, No. CV 10-5222 NJV, 2011 WL 2110306, at *6 (N.D. Cal. May 26, 2011) (finding that, although the censure at issue did more than just reprimand plaintiff and express the

city council's disapproval, it did not punish or penalize plaintiff's free speech because they did not prevent plaintiff from performing her official duties or restricting her opportunities to speak and therefore plaintiff failed to state a claim under the First Amendment); *cf. Booher v. Bd. of Regents, N. Kentucky Univ.*, No. 2:96-CV-135, 1998 WL 35867183, at *12 (E.D. Ky. July 22, 1998) ("The department's vote to censure the plaintiff thus affects his ability to engage in the department's system of governance; it may deny him participation in departmental decision-making; and it may affect his teaching assignments. The court finds that such a vote of censure is sufficiently adverse to support a retaliation claim.").

Plaintiff cites *Little v. City of North Miami*, 805 F.2d 962 (11th Cir. 1986), in support of his position that the censure did, in fact, punish him for exercising his First Amendment rights. *Little*, however, does not fit squarely with the facts of this action. In *Little*, the plaintiff was a professor of law at the University of Florida and a member of the Florida Bar Association. *Id*. at 964. The plaintiff represented the Florida Defenders of the Environment in two Florida state court civil actions; that representation was on a *pro bono* basis with the approval of the University of Florida. *Id*. The City of North Miami ("North Miami") was an intervening party in the second lawsuit, which involved the constitutionality of state appropriation for the purchase of land owned by North Miami. *Id*. As a result of the plaintiff's involvement in that litigation, the North Miami city council adopted a resolution,

which stated, "[T]he Council of the City of North Miami hereby censures Professor Joseph W. Little for improper use of public funds to represent private parties in litigation against the State and against the interests of the City of North Miami." *Id*. This was done without notice to the plaintiff and without verification that the assertions were truthful. Moreover, as a result of the passage and publication of the resolution, the plaintiff was the subject of several governmental investigations. *Id*.

The issue considered by the Eleventh Circuit on appeal was whether plaintiff had stated a claim against North Miami, a government entity, under *Monell v. Dept. of Soc. Servs*., 436 U.S. 658 (1978). Furthermore, the Eleventh Circuit found that the complaint in *Little* alleged that the North Miami city council decided that plaintiff was guilty of culpable conduct and decided to publicly and expressly censure him for engaging in a form of political expression, *i.e.*, the representation of an adverse party in state litigation. In the present case, the Court is not deciding whether plaintiff has stated a claim against a government entity under *Monell*, nor does plaintiff allege that he was not given notice of the censure. Most importantly, the plaintiff in *Little* was not a member of the North Miami government; rather, the plaintiff was an attorney involved in adverse litigation. For these reasons, the Court finds that *Little* does not help plaintiff in this instance. *See Kleis v. City of Becker*, No. CV 16-1005 ADM/JSM, 2016 WL 4007573, at *3 (D. Minn. July 26,

2016) (finding plaintiff's reliance on *Little* was misplaced because *Little* involved a censure issued by a city council against a non-member, in contrast to the intra-council disputes in *Blair v. Bethel Sch. Dist.*, 608 F.3d 540 (9th Cir. 2010), *Phelan*, *Zilich*, and the present case where plaintiff alleged that his fellow council members censured him due to his continued criticism regarding operation of a golf course).

Therefore, the Court will grant the Motion to Dismiss insofar as defendants request dismissal against of the First Amendment retaliation claim against Dr. Hugine and the Trustees in their individual capacities for censure.

### 3. Filing of ethics complaint

The Court finds that plaintiff has failed to state a First Amendment retaliation claim against Dr. Hugine or the Trustees (other than Trustee Williams) in their individual capacities for the filing of an ethics complaint. This is because plaintiff has alleged that Trustee Williams filed the ethics complaint. With respect to Trustee Williams, defendants argue that the filing of an ethics complaint does not have an adverse impact, and that Trustee Williams also has his own First Amendment right to file an ethics complaint. The Court agrees that the allegations in the amended complaint do not demonstrate that the filing of an ethics complaint had an adverse impact on plaintiff.

Alabama law permits any person to file an ethics complaint, and the filing of the ethics complaint does not equate to a determination that an ethics violation

actually occurred.  Moreover, the Alabama Code expressly provides for the vetting of an ethics complaint.  *See* Ala. Code § 36-25-4.  Thus, although the Court cannot find any case law from the Eleventh Circuit on this point, it finds that, as alleged in the amended complaint, plaintiff has failed to state a claim against Trustee Williams for filing an ethics complaint.  *See, e.g.*, *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999) ("On the contrary, Colson has alleged only that she was the victim of criticism, an investigation (or an attempt to start one), and false accusations: all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence."); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 68 (2d Cir. 1999) ("The conduct attributed by the complaint to the legislators is that they made accusations against X–Men, asked government agencies to conduct investigations into its operations, questioned X–Men's eligibility for an award of a contract supported by public funds, and advocated that X–Men not be retained. We are aware of no constitutional right on the part of the plaintiffs to require legislators to refrain from such speech or advocacy."); *Jackson v. Knight*, No. 8:04-CV-1648-T-27MSS, 2006 WL 8429883, at *4 (M.D. Fla. Oct. 24, 2006) ("The Court will assume for purposes of the motions for summary judgment that Plaintiff engaged in constitutionally protected activity by filing a lawsuit and ethics complaint against former police chief Holder.") (citing

*Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (prisoner's filing of lawsuits and administrative grievances was protected expression)).

Therefore, the Court will grant the Motion to Dismiss insofar as defendants request dismissal against of the First Amendment retaliation claim against Dr. Hugine and the Trustees in their individual capacities for the filing of the ethics complaint.

### 4.    Harassment

The Court finds that plaintiff has failed to state a claim under the First Amendment with respect to any generalized harassment by unidentified people alleged in the amended complaint.   (Doc. 25, p. 9 (alleging that articles were published against him and that he received letters from the AEC, but failing to identify who committed these alleged acts)).

### D.    Defendants are nonetheless entitled to qualified immunity.

Defendants also argue that the First Amendment retaliation claim against them in their individual capacities should be dismissed due to qualified immunity. The Court has found that plaintiff has failed to state a claim against defendants for First Amendment retaliation.   The Court will nonetheless consider whether, even assuming that plaintiff had stated a claim for First Amendment retaliation against defendants in their individual capacities, whether they would be entitled to qualified immunity.

To receive qualified immunity, the public official carries the initial burden of demonstrating that "he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Courson v. McMillan*, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal quotation marks omitted) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988)). A court assessing whether a defendant's actions fall within his discretionary authority asks whether the defendant was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Supreme Court has set forth a two-part test for evaluating the qualified immunity defense. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from by Pearson v. Callahan*, 555 U.S. 223 (2009). A court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* If a constitutional right would have been violated, assuming the plaintiff's version of the facts as true, the court must then determine "whether the right was clearly established." *Id.* In *Pearson*, the Supreme Court held that courts may exercise their discretion in applying the

two-part test under *Saucier* in whatever order is best suited to the facts of the case. 555 U.S. at 810. Thus, a court need not decide whether a constitutional violation occurred before determining whether qualified immunity applies. Importantly, the Supreme Court noted that cases at the pleading stage may be best suited for reordering the sequence because in the early stages of litigation, "the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Id.* at 822.

The purpose of qualified immunity is to ensure that government officials are not required to "err always on the side of caution because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotations and citations omitted).

### 1. The defendants were acting within their discretionary authority.

In this case, there is no doubt that each defendant was acting within his or her discretionary authority at all relevant times. "In determining whether a defendant performed a discretionary function, our inquiry is not whether the act complained of was done for an improper purpose, but 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties'" *Plotkin v. United States*, 465

F. App'x 828, 831–32 (11th Cir. 2012) (quoting, in part, *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1282 (11th Cir.1998)).

A decision to appoint a board member to a board committee certainly falls within performance of a legitimate job-related function in this case. The Alabama Code gives the Board "all the rights, privileges and franchises necessary to the promotion of the ends of its creation and shall be charged with all corresponding duties, liabilities and responsibilities." Ala. Code § 16-49-22. Furthermore, the Board "shall have exclusive jurisdiction, power and authority with regard to the supervision, management and control of" of Alabama A&M. *Id*. at 16-49-24. The bylaws further expound on the Board's functions. In particular, the bylaws address the creation and appointment of committees and states that the president pro tempore will make those appointments. (Doc. 33-1, p. 18). Although the bylaws do not appear to address removal of a trustee from a board committee, the Court also finds that such an act would be discretionary as that term is defined by the Eleventh Circuit. Thus, it certainly would have been within Trustee Taylor's authority to make a board appointment.

The Court also finds that the act of voting to censure would also be within the Trustees' discretionary authority. The bylaws expressly provide that the Board may by majority vote censure a trustee. (Doc. 33-1, p. 13). Plaintiff argues that the University's enabling legislation "does not permit [defendants to] censure" and

the bylaws "are illegitimate" because the bylaws "are outside of the enabling legislation . . . ." (Doc. 38 at 6-7.) Plaintiff misapprehends the law regarding discretionary authority. The question is whether the action is within, or reasonably related to, the outer perimeter of an official's duties. Plaintiff essentially requests that the Court make an implicit ruling that the resolution related to the bylaws was unauthorized, an issue that is not even properly before it. The Court declines to do so in this context, and instead, finds that, in voting to censure plaintiff, the Trustees were acting within the outer perimeter of their duties. Even putting the bylaws aside, censure of a fellow board member for disciplinary issues is well within the bounds of a typical board member's official duties. Henry M. Robert, et al., Robert's Rules of Order Newly Revised, p. 643, § 61 (11th ed. 2011). Thus, the Court finds that any defendant voting in favor of censure was acting within her or her discretionary authority.

Finally, the Court also finds that Trustee Williams was acting within the outer perimeter of his job duties when filing an ethics complaint on behalf of the Trustees, including himself, and Dr. Hugine. Any person may file an ethics complaint. Ala. Code § 36-25-2, -4, and -27. Moreover, a governmental agency head shall "within 10 days file reports with the commission on any matters that come to his or her attention in his or her official capacity which constitute a violation of this chapter." Ala. Code § 36-25-17(a). Thus, any defendant, to the

extent applicable, was acting within his or her discretionary authority with respect to the filing of the ethics complaint. *See Maggio v. Sipple*, 211 F.3d 1346, 1351 (11th Cir. 2000) (finding that the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal action; instead, a court must ask whether the act complained of would be within or reasonably related to the outer perimeter of an official's discretionary duties).

## 2.    Defendants did not violate clearly established law.

Because defendants were acting within their discretionary authority with respect to the allegedly retaliatory actions, the burden now shifts to plaintiff to show that they violated clearly established law. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting, in part, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

The Eleventh Circuit has delineated three methods by which a plaintiff can demonstrate that a constitutional right was clearly established.

> *First*, the plaintiffs may show that a materially similar case has already been decided. *Second*, the plaintiffs can point to a broader, clearly established principle that should control the novel facts of the situation. *Finally*, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary. Under controlling law, the plaintiffs must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [relevant State Supreme Court].

*Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (emphasis in original) (citing *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012)). The second and third categories are known as "obvious clarity" cases. *Id*. These cases exist when the constitutional provision at issue is so clear and the conduct so bad that case law is not needed to establish that it was unlawful, or where the case law that does exist is so clear and broad that every objectively reasonable governmental official facing the circumstances would know that his or her conduct violated federal law. *Id*. Cases do not often arise under the second and third methods, and the Court finds that this case is no exception. *Id*. The Court will therefore consider whether plaintiff has pointed to a materially similar case which gave defendants fair warning that the conduct at issue violated the First Amendment.

The Eleventh Circuit has found that "[it] is particularly difficult to overcome the qualified immunity defense in the First Amendment context." *Id*. at 1210. Plaintiff cites several cases in his response in support of his argument that qualified immunity is not appropriate. Plaintiff points to *Carollo v. Boria*, 833 F.3d 1332 (11th Cir. 2016), to show that the alleged conduct in the amended complaint

violated clearly established law. In *Carollo*, the plaintiff, a city manager, reported to local and federal agencies violations of federal and state law by other city officials. *Id*. at 1326. The plaintiff also publicly disclosed these allegations at city council meetings. *Id*. The plaintiff was ultimately terminated by the city council. *Id*. The plaintiff then filed a lawsuit alleging, among other things, a First Amendment retaliation claim. The federal district court denied qualified immunity to defendants, and they appealed. *Id*. at 1327.

The Eleventh Circuit found that, "[a]gainst the backdrop of this Circuit's precedents and the Supreme Court's guidance in *Pickering* and *Garcetti*, we conclude that reasonable public officials would have known at the time of [the plaintiff]'s termination that it violated the First Amendment to terminate a colleague for speaking about matters of public concern that are outside the scope of his ordinary job responsibilities." *Id*. at 1334. However, in the present action, plaintiff was not terminated. Rather, the alleged retaliatory actions were not being appointed to a board committee, censure, and the filing of an ethics complaint by a fellow board member. These acts do not constitute termination of paid employment, and therefore *Carollo* is not helpful.

Plaintiff also cites *Little*, 805 F.2d 962, a case already discussed by the Court in its analysis with respect to whether plaintiff has stated a claim for First Amendment retaliation. As the Court has already noted, however, the facts of

*Little* are not similar to the facts at hand. The plaintiff in *Little* was a professor engaged in adverse litigation and was not a member of North Miami's city government. Furthermore, the federal district court in *Little* had, on a 12(b)(6) motion, dismissed the action based on failure to state a claim against the North Miami city council, a government entity  That decision was reversed by the Eleventh Circuit, which found that the plaintiff had stated a claim against North Miami as entity under *Monell*. Thus, *Little* does not help plaintiff.

Finally, plaintiff mentions *Lane v. Franks*, 573 U.S. 228 (2014). But *Lane* involved the *termination* of an employee. Specifically, *Lane* held that the First Amendment protects a public employee who provides sworn truthful testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities, and therefore he cannot be terminated based on same. *Id*. at 243. Moreover, the Supreme Court nonetheless determined that qualified immunity barred the claim. *Id*. ("In "The relevant question for qualified immunity purposes is this: Could Franks reasonably have believed, at the time he fired Lane, that a government employer could fire an employee on account of testimony the employee gave, under oath and outside the scope of his ordinary job responsibilities? Eleventh Circuit precedent did not preclude Franks from reasonably holding that belief. And no decision of this Court was sufficiently clear to cast doubt on the controlling Eleventh Circuit precedent."). In particular, the Supreme Court stated, "At the

time of Lane's termination, Eleventh Circuit precedent did not provide clear notice that subpoenaed testimony concerning information acquired through public employment is speech of a citizen entitled to First Amendment protection. At best, Lane can demonstrate only a discrepancy in Eleventh Circuit precedent, which is insufficient to defeat the defense of qualified immunity." *Id*. at 245. Thus, *Lane* does not help plaintiff either.

Finally, the other cases cited by plaintiff are either not helpful or are not controlling. *See, e.g.*, *Maggio v. Sipple*, 211 F.3d 1346, 1351 (11th Cir. 2000) (finding that defendant was entitled to qualified immunity because plaintiff failed to produce a case in which speech materially similar to hers was held to be protected); *King v. Board of County Commr's*, 2018 WL 515350, at *4 (M.D. Fla. 2018).

In sum, plaintiff has not met his burden by pointing to any case law putting defendants on notice that their actions in failing to appoint plaintiff to a board committee, passing a resolution to censure him, or filing an ethics complaint against him violated his First Amendment rights. Therefore, the Court concludes that defendants are entitled to qualified immunity and will grant the Motion to Dismiss insofar as it requests dismissal of the First Amendment retaliation claim against defendants in their individual capacities for this additional reason.

**E.    The Court declines to exercise supplemental jurisdiction over the remaining state-law claims.**

In any civil action where a federal district court has original jurisdiction, it shall have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). That being said, a federal district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c).

The Supreme Court added a gloss to this statutory language in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), when observing that

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant [now "supplemental"] state-law claims. When the balance of these factors indicates that a case properly belongs in state court, *as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain*, the federal court *should decline* the exercise of jurisdiction by dismissing the case without prejudice.

*Id.* at 349-50 (emphasis added) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966)).

Here, the Court has dismissed the First Amendment retaliation claim, a claim over which it had federal question jurisdiction. There is no independent basis for the Court to assert jurisdiction over the remaining state-law claims

between non-diverse parties. Consequently, the Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims for defamation against defendants in their individual capacities and for violation of Alabama Code Sections 26-25-24 and 36-25-27(a)(4) against Trustee Williams in his individual capacity. *See Chambers v. Cherokee Cty.*, 743 F. App'x 960, 964 (11th Cir. 2018) ("Here, the district court thoroughly analyzed and properly dismissed each of Chambers' claims arising under federal law. Because Georgia law applies to claims arising under Georgia statutes and Georgia contract law, the district court was well within its discretion to dismiss those remaining claims without prejudice."); *Trigo v. City of Doral*, 663 F. App'x 871, 875 (11th Cir. 2016) ("[S]ince the Trigos were not entitled to relief on their federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over their remaining state law claim."). Therefore, the Court will dismiss plaintiff's state-law claims without prejudice to his right to re-file those claims in the appropriate state court.

## IV. CONCLUSION

Accordingly, and for the reasons stated herein,

IT IS ORDERED that the Motion to Dismiss (doc. 32) is GRANTED as follows:

The Motion to Dismiss is GRANTED insofar as it requests DISMISSAL WITH PREJUDICE of plaintiff's First Amendment retaliation claim against defendants in their official and individual capacities.

The Motion to Dismissed is GRANTED insofar as it requests DISMISSAL of plaintiff's state-law claim for defamation against defendants in their individual capacities in Count Two of the amended complaint and for violation of Alabama Code Sections 36-25-24 and 36-25-27(a)(4) against Trustee Williams in his individual capacity in Count Three of the amended complaint WITHOUT PREJUDICE TO PLAINTIFF'S RIGHT TO RE-FILE THOSE CLAIMS IN THE APPROPRIATE STATE COURT.

**DONE** and **ORDERED** June 25, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE